711 So.2d 589 (1998)
The STATE of Florida, Appellant,
v.
Dirk SUMMERLOT, Appellee.
No. 96-3291.
District Court of Appeal of Florida, Third District.
April 22, 1998.
Rehearing Denied June 10, 1998.
*590 Robert A. Butterworth, Attorney General, and Sandra S. Jaggard, Assistant Attorney General, for appellant.
Bennett H. Brummer, Public Defender, and Suzanne M. Froix, Assistant Public Defender, for appellee.
Before SCHWARTZ, C.J., and GREEN and SORONDO, JJ.
SORONDO, Judge.
The state appeals an order dismissing charges of organized fraud, contracting without a license and grand theft against defendant, Dirk Summerlot. We reverse.
The state charged Summerlot by information with: 1) organized fraud in violation of section 817.034(4)(a)1, Florida Statutes (1991), and 2) contracting without a license in violation of section 489.127(1)(a) and (f), Florida Statutes (1991). Summerlot filed a sworn motion to dismiss the contracting without a license charge, maintaining that he was an inactive, licensed, certified building contractor at the time he contracted to repair the house of the alleged victims, Janet and Dan McGuire. In July of 1996, the trial court held a hearing on the motion and ruled that it would dismiss the contracting without a license count, finding that Summerlot was "certified" as provided by section 489.127.[1] Later that month, the state filed an amended information charging Summerlot with: 1) organized fraud in violation of section 817.034(4)(a)1, and 2) grand theft first degree in violation of section 812.014(1), (2)(a), Florida Statutes (1991).
In October of 1996, Summerlot filed a new sworn motion to dismiss the grand theft and organized fraud charges, claiming that the state could not prove he intended to defraud the McGuires because he performed work under the contract. The state traversed, contending that Summerlot had misrepresented to the McGuires that he had to reactivate his license when he never had an active license, that repairs were being legally made when they were not, that he had pulled permits for the repairs when this was not done until later by someone else, that he had paid for supplies and paid subcontractors in full when he had not, and that he had misrepresented the costs associated with the contract.
The trial court conducted a hearing on the sworn motion to dismiss less than a week after it was filed. The state acknowledged that Summerlot did not "communicate" as *591 defined in section 817.034(3)(a) in his scheme to defraud the McGuires, but argued that this element was not required to prove a charge under section 817.034(4)(a)1. With respect to the grand theft count, Summerlot argued that he did not have criminal intent. The state responded that its theory on the grand theft charge was theft by false pretenses including misrepresentations that Summerlot was a licensed contractor, in addition to the misrepresentations set forth above.
On November 1, 1996, the trial court entered an order granting the motions to dismiss both count two of the original information, contracting without a license, and counts one and two of the amended information, organized fraud and grand theft first degree. The trial court found that the state could not prove that Summerlot contracted without a license, as he was a certified contractor as defined by section 489.105(8), Florida Statutes (1991). With respect to the organized fraud count, the court found:
In light of the title of section 817.034 and the legislative intent embodied in section 817.031(1) of the statute, the State must prove that the defendant did "communicate" as part of a scheme to defraud, and that the victims' property was obtained by means of said scheme. This is so regardless of the fact that the defendant is charged under section 817.034(4)(a) and not under section 817.034(4)(b).
With regard to the grand theft count, the trial court found that the state could not show that Summerlot made a material misrepresentation, as it could not prove that he contracted without a license and the other misrepresentations asserted were not material and did not rise to a criminal level.
The state contends that the trial court erred in granting the motion to dismiss the organized fraud charge as section 817.034(4)(a) does not require proof of any communication. We agree.
Section 817.034(4) provides:
(a) Any person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud ...
(b) Any person who engages in a scheme to defraud and, in furtherance of that scheme, communicates with any person with intent to obtain property from that person is guilty, for each such act of communication, of communications fraud....
§ 817.034(4). The trial court read subsection (4)(a) in conjunction with subsection (1) of 817.034 which reads as follows:
(1) LEGISLATIVE INTENT.
(a) The Legislature recognizes that schemes to defraud have proliferated in the United States in recent years and that many operators of schemes to defraud use communications technology to solicit victims and thereby conceal their identities and overcome a victim's normal resistance to sales pressure by delivering a personalized sales message.
(b) It is the intent of the Legislature to prevent the use of communications technology in furtherance of schemes to defraud by consolidating former statutes concerning schemes to defraud and organized fraud to permit prosecution of these crimes utilizing the legal precedent available under federal mail and wire fraud statutes.
The trial court ruled that the state must prove that the defendant did "communicate" as a part of a scheme to defraud, regardless of whether the defendant is charged under 817.034(4)(a) or 817.034(4)(b).
The legislative intent set forth in 817.034(1) reflects the aim of preventing the use of communications technology in the perpetration of fraud. However, this provision also reflects that the enactment of section 817.034 consolidated former statutes concerning schemes to defraud (sections 817.035 and 817.036), neither of which required "communication."[2] Section 817.034(4)(c) provides that separate judgments and sentences may be imposed for offenses under subsections (4)(a) and (4)(b), which further suggests the legislative intent *592 that these subsections proscribe separate conduct.
In order to give effect to legislative intent, and to avoid a construction of the statutory language which would lead to an absurd result, our analysis must focus upon a consideration of the statute as a whole. See State v. Webb, 398 So.2d 820, 824 (Fla.1981). This includes "`the evil to be corrected, the language of the act, including its title, the history of its enactment, and the state of the law already in existence bearing on the subject.'" See id (citing Foley v. State, 50 So.2d 179, 184 (Fla.1951)) (emphasis omitted). Considering the legislative intent of subsection (1) together with the plain language of subsection (4), we hold that the state is not required to prove that a defendant "communicated" as a part of a scheme to defraud charged pursuant to section 817.034(4)(a).
The state next contends that the trial court erred in dismissing the charges of contracting without a license and grand theft, where Summerlot misrepresented the status of his contractor certificate. The trial court found that the state could not prove that Summerlot contracted without a license, as he was certified as defined by section 489.105(8) and section 489.127(1), Florida Statutes (1991), which did not specify that his certificate must be active. Summerlot correctly asserted at oral argument that section 489.127(1), Florida Statutes, was amended in 1994 to add a paragraph stating:
For purposes of this subsection, a person or business organization operating on an inactive or suspended certificate or registration, or operating beyond the scope of work or geographical scope of the registration, is not duly certified or registered.
Ch. 94-119, § 264, Laws of Fla. However, the addition of this clarification does not render section 489.127 inapplicable in this case. The section 489.127 prohibitions against a person falsely holding him or herself out as a certificate holder or acting in the capacity of a certified contractor presuppose that the certification is valid or active. Summerlot was properly charged with a violation of section 489.127(1)(a) or (1)(f) where his certificate of competence as a certified building contractor was issued with a letter indicating that it was inactive. Therefore, the trial court erred in dismissing both the contracting without a license charge and the grand theft charge based upon the allegation that Summerlot misrepresented the status of his license. See Iglesias v. State, 676 So.2d 75, 76 (Fla. 3d DCA 1996)(trial court improperly dismissed grand theft charge where defendant misrepresented that he was a licensed contractor).
Furthermore, the technical requirements of sections 489.105 and 489.127(1) regarding contracting without a license are not dispositive of Summerlot's motion to dismiss the grand theft charge in this case. Summerlot was charged with grand theft by false pretenses. The state alleged in its traverse that he made misrepresentations regarding the legality of repairs, pulling permits, payments for supplies, payment of subcontractors, and the costs associated with the contract. The trial court erred by determining that these misrepresentations were not material or sufficient to support a grand theft charge, as opposed to civil liability. See Winnemore v. State, 150 So.2d 277, 279-80 (Fla. 2d DCA 1963)(grand theft charge on theory of larceny by fraud upheld where defendant falsely claimed that he paid a supplier in full, despite contention that this misrepresentation was only sufficient to find civil liability and not criminal liability).
The order under review is reversed and the cause remanded for further proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] No written order granting the motion to dismiss was filed at that time.
[2] See ch. 87-382, §§ 1, 2, Laws of Fla.